Joseph R. Manning, Jr., Esq. (State Bar No. 223381)
**MANNING LAW, APC**
20062 SW Birch Street, Ste. 200
Newport Beach, CA 92660
Office: (949) 200-8755
DisabilityRights@manninglawoffice.com

Attorney for Plaintiff: ANTHONY BOUYER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY BOUYER, an individual, <br><br> Plaintiff, <br><br> v. <br><br> GIDON A. LAVI; an individual; ROBERTA KAY LAVI, an individual, <br><br> Defendants. | **Case No**. 20-cv-04764- SB-ASx <br><br> **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> **Date: February 12, 2021** <br> **Time: 8:30 a.m.** <br> **Courtroom: 6C** <br><br> Honorable Stanley Blumenfeld Jr. |

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT………………………………………………..1

II. RELEVANT FACTS……………………………………………………….....2

III. LEGAL STANDARD…………………………………………………….......5

IV. THE BARRIERS TO ACCESS…………………………………………….. 5

    A. Plaintiff is Disabled…………………………………………………....7

    B. Defendants Own and Operate a Place of Public Accommodation…….7

    C. The Property Has Barriers That are Readily Removable ……………...8

        1. Path of Travel……………………………………………………….8

        2. Parking……………………………………………………………...9

        3. Interior………………………………………………………………9

        4. Removal of ADA violations is readily achievable…………...10

    D. The Plaintiff Encountered This Violation and Is Being Deterred

       From Patronage..………………………………………………....………11

V. DEFENDANT'S SHODDY REMEDIAL EFFORTS IN RESPONSE TO

   LITIGATION CANNOT MOOT PLAINTIFF'S CLAIM…………………..12

VI. REMEDIES…………………………………………………………….… 13

VII. CONCLUSION……………………………………………………………15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Celotex Corp v. Catrett*,
  477 U.S. 317 (1986) .................................................................................... 5

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
  631 F.3d 939 (9th Cir. 2011) .................................................................. 6, 8

*City of Mesquite v. Aladdin's Castle, Inc.*,
  455 U.S. 283 (1982) .................................................................................. 13

*D'Lil v. Best Western Encina Lodge & Suites*,
  538 F.3d 1031 (9th Cir. 2008) .................................................................. 14

*Doran v. 7-Eleven, Inc.*,
  524 F.3d 1034 (9th Cir. 2008) .................................................................. 14

*Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*,
  603 F.3d 666 (9th Cir. 2010) ...................................................................... 6

*Moeller v. Taco Bell Corp.*,
  816 F.Supp.2d 831 (N.D. Cal. 2011) .......................................................... 6

*Rush v. Denco Enterprises, Inc.*,
  857 F. Supp. 2d 969 (C.D. Cal. 2012) ........................................................ 8

*United States v. Concentrated Phosphate Export Ass'n*,
  393 U.S. 199 (1968) .................................................................................. 12

**Statutes**

42 U.S.C. § 12102(2)(A) ................................................................................ 7

42 U.S.C. § 12181(7) ..................................................................................... 7

42 U.S.C. § 12182(a) ................................................................................. 6, 7

42 U.S.C. § 12182(b)(2)(A)(iv) ..................................................................... 8

42 U.S.C. § 12188(a) ................................................................................ 7, 13

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  PRELIMINARY STATEMENT

Mr. Bouyer is disabled and substantially limited in performing one or more major life activities, including but not limited to: walking, standing, ambulating, sitting, in addition to twisting, turning, and grasping objects.  As a result of these disabilities, he relies upon mobility devices, including a wheelchair, to ambulate. He travels throughout Southern California; and unfortunately, he has had to deal with the stress and frustration of the lack of accessible parking and other features that non-disabled people take for granted.

This occurred during his visit to Carmel Liquor (the "Business") at 12516 Vanowen St., North Hollywood, CA 91605 (the "Property"). However, instead of simply being able to park and enjoy the Business's offerings, Mr. Bouyer once again found himself in the disappointing and frustrating, yet all too-familiar situation of finding accessible parking only to realize that he will not be able to safely park and make his way to the entrance of the Business because of barriers to access. A simple thing like parking a car and entering a store is a basic right that was unequivocally denied to Mr. Bouyer, and it was difficult and troublesome for him.

Although the law has required these simple accommodations for disabled Americans for decades, Anthony Bouyer is continuously confronted with inaccessible restaurants, shops, hotels, and the like.  And, he has been vilified for his decision to haul law breaking businesses before courts and tribunals of the state to hold them accountable. In this case, the Defendant's failure to provide accessible parking and an accessible ramp is illegal and discriminatory under the ADA, and has been for years.

In response to this action, Defendants altered the Property by attempting to removing the curb ramp and restriping some of the parking lot. By doing substandard work on the construction, Defendants did not remove all architectural

barriers to access and even created additional barriers that are violations of the ADA. Plaintiff returned to the Property and encountered these barriers. The presence of barriers created during litigation indicates no serious commitment by Defendants to accessibility, which further supports injunctive relief.

Because Defendants have violated the law and excluded Mr. Bouyer and customers like him for nearly three decades, Mr. Bouyer seeks an Order requiring Defendants, the owners of the property to provide and maintain accessible parking and accessible routes, and to remove all barriers to access at the Property.

## II.   RELEVANT FACTS

Mr. Bouyer is disabled and is substantially limited in performing one or more major life activities, including but not limited to: walking, standing, ambulating, sitting, in addition to twisting, turning, and grasping objects. (SUF #1) Plaintiff is paraplegic. (SUF #2) He has some ability to move his quadriceps but his feet are paralyzed. (SUF #2) Plaintiff can ambulate short distances with braces on his feet and with a walker, but he otherwise cannot walk at all. (SUF #2) Plaintiff uses a wheelchair for daily living. (SUF #3) Plaintiff drives a SUV and requires accessible parking. When he exits his vehicle, he first opens the trunk where his manually-powered wheelchair is located. (SUF #3) He then uses his braces and walker, which he keeps in the front seat, to exit his vehicle and shuffle along the side of his SUV to the trunk to get to his wheelchair. (SUF #3) Plaintiff then removes his wheelchair for use and replaces his walker in the trunk of the vehicle, before closing it and making his way using his wheelchair. (SUF #3) Plaintiff prefers to use van accessible parking because it offers more room for him to move along the side of his car with a walker to get to his wheelchair. (SUF #3)

Carmel Liquor and Salsa and Beer ("Business") are located at or about 12516 Vanowen St, N. Hollywood, CA 91605 (SUF #6-7) Defendants Gidon A. Lavi and Roberta Kay Lavi ("Defendants") are the current owners of the real property located at12516 Vanowen St, N. Hollywood, CA 91605 ("Property") and were so

on May 22, 2020, and January 6, 2021. (SUF #4-5)

On May 22, 2020, Mr. Bouyer went to the Property to buy a drink and to confirm that this public place of accommodation is accessible to persons with disabilities within the meaning of federal and state law. (SUF #7). As Mr. Bouyer parked at an accessible parking spot at the Property, he discovered that:

    1.    There was a built up curb ramp that projects from the sidewalk and into the access aisle. (SUF #8)

    2.    The curb ramp was in excess of the maximum grade. (SUF #9)

    3.    The accessible parking space does not contain compliant accessible parking signage. (SUF #9)

On or about October 22, 2020, Defendants had altered the Property, which they argued mooted this. (*See* Def. Mot. to Dismiss, ECF #27.) On December 30, 2020, Janis Kent, a Certified Access Specialist ("CASp") who has over 35 years of experience and a professional Master's degree in architecture inspected the Property and took photographs. (SUF #11)

Ms. Kent found that Defendants' alterations to the Property were inadequate to remove the barriers to access alleged in the Complaint and even created additional barriers to access. (SUF #12) Further, Ms. Kent identified several other barriers to access in the interior and exterior of the Property that directly impact Plaintiff, who uses a wheelchair to ambulate. (SUF #13)

As a result of Defendants' removal of the curb ramp and restriping, they created additional barriers to access. (SUF #12) For example, Ms. Kent observed and took photos of the following barriers at the Property on December 30, 2020, created in part by Defendants' poor and incomplete remedial work:

- The two reserved parking spaces are missing a van accessible space[1] in violation of 2010 ADA Guidelines §§ 208.2, 208.3 and CBC §§ 11B-208.2, 208.3. (SUF #14)

---

[1] Plaintiff prefers to van accessible parking because it offers room for him to move along the side of his car with a walker to get to his wheelchair in the trunk.

MEMORANDUM OF POINTS AND AUTHORITIES

- The striping was not fully compliant and the slope beyond the foot and edge of the space and aisle were excessive in violation of sections 502.3.3 and 11B-502.3.3. (SUF #15)

- While there is no specific requirement for slopes beyond the demarcated space, an individual is allowed to go behind their own parked vehicle which would require a level slope to at least 36" beyond the space. (SUF #16)

- There also was no connecting path of travel from the public right of way to the parking and entries without going into the vehicular way which is not compliant in violation of sections 206.2, 403.3 and 11B-206.2, 11B-403.3. (SUF #17)

- The walkway at the head of the space had excessive slope and was missing yellow detectable warnings where there is a blended transition. (SUF #18)

- The entry to the store does not have a level landing to 60" beyond the face of the door in violation of sections 206.4, 404.2.4.4 and 11B-206.4, 11B-404.2.4.4. (SUF #19)

- The threshold has not been maintained and there are excessive gaps and level changes from the sidewalk through the door and into the store in violation of sections 302.3, 303.2, 404.2.5, 36.211 and 11B-302.3, 11B-303.2, 11B-404.2.5, 11B-108. (SUF #20)

- The door itself does not have a smooth surface to 10" above the finished floor and a portion of the clear floor space was blocked in violation of sections 404.2.4, 404.2.10 36.211 and 11B-404.2.4, 11B-108. (SUF #21)

- Within the store itself, portions of the flooring were not firm and stable due to a loose walk-off mat and to a partially infilled hole near the refrigerated cabinets in violation of sections 302.1, 302.2 and 11B-302.1, 11B-302. (SUF #22)

- The counter was too high and does not have a 36" wide portion clear and usable in violation of sections 904.4.1 and 11B-904.4.1. (SUF #23)

- The aisles in the interior were not a compliant width in violation of 403.5.1 and 11B-403.5.1, except 4. (SUF #24)

On January 6, 2021, Plaintiff learned that the Property had been altered and he returned to see if the barriers to access had been removed. (SUF #31) When Plaintiff arrived, he noticed that the curb ramp had been paved over and flattened and that there was new striping on the ground. (SUF #32) However, when Plaintiff exited his SUV to get to his wheelchair in the trunk, he noticed that slope on the

sides and back of his SUV and around the parking space were not level, which caused him difficulty and made it hard to keep balance when Plaintiff moved on his walker. (SUF #33-34)

The barriers Mr. Bouyer encountered deny him full and equal access to the Property and its facilities on an ongoing basis (SUF #39); and although this has deterred him, Mr. Bouyer intends to return for the dual purpose of availing himself of the goods and services offered to the public and to ensure that Defendants cease evading their responsibilities under federal and state law. (SUF #40)

As demonstrated by the December 30, 2020, inspection of the Property by a CASp, Defendants' alterations to the Property were inadequate to remove the barriers to access alleged in the Complaint, the changes created additional barriers to access, and other barriers to access in the interior and exterior of the Property also exist. The presence of barriers created during litigation indicates no serious commitment by Defendants to accessibility, which supports injunctive relief.

### III.  LEGAL STANDARD

Pursuant to section 56 of the Federal Rules of Civil Procedure, a party may bring a motion for summary judgment where there is no genuine dispute as to any material fact. Motions for summary judgment are not "disfavored." *Celotex Corp v. Catrett*, 477 U.S. 317, 327 (1986). In the present case, there can be no genuine dispute over the facts of the case and those facts inform the Court and the parties that it would be a waste of judicial resources for this case to proceed to trial. There is no genuine issue of material fact and this court should grant the Plaintiff's motion.

### IV.  THE BARRIERS TO ACCESS

Under Title III of the Americans With Disabilities Act of 1990 ("ADA), the general rule is that: "No individual shall be discriminated against on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation

by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The term "discrimination" can be misleading. The ADA applies not just to intentional discrimination but to thoughtlessness and indifference:

> "Its passage was premised on Congress's finding that discrimination against the disabled is most often the product not of invidious animus, but rather of thoughtlessness and indifference, of benign neglect, and of apathetic attitudes rather than affirmative animus. The concept of "discrimination" under the ADA does not extend only to obviously exclusionary conduct-such as a sign stating that persons with disabilities are unwelcome or an obstacle course leading to a store's entrance. Rather, the ADA proscribes more subtle forms of discrimination-such as difficult-to-navigate restrooms and hard-to-open doors-that interfere with disabled individuals "full and qual enjoyment" of places of public accommodation."

*Chapman v. Pier 1 Imports (U.S.) Inc.,* 631 F.3d 939, 944-45 (9th Cir. 2011) (internal quotes and citations removed for readability).

To succeed on his Title III, ADA claim, "a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." *Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.,* 603 F.3d 666, 670 (9th Cir. 2010). "The third element-whether plaintiffs were denied public accommodations on the basis of disability-is met if there was a violation of applicable accessibility standards." *Moeller v. Taco Bell Corp.,* 816 F.Supp.2d 831, 847 (N.D. Cal. 2011) *citing, Chapman,* 631 F.3d at 945. This is because discrimination is defined both as either a failure to ensure that alterations are "readily accessible to and useable by persons with disabilities" and, where there are no alterations, "a failure to remove architectural barriers…in existing facilities… where such removal is readily achievable." 42. U.S.C. §§ 12183(a)(2); 12182(b)(2)(A)(iv). Thus, the following is a simplified statement of the elements necessary for the plaintiff to prove discrimination under this section:

1. Plaintiff must be disabled. 42 U.S.C. § 12182(a);
2. The defendant's facility must be a place of "public accommodation" and, therefore, governed by Title III of the ADA. *Id.*;
3. The defendant must be a responsible party, i.e., owners, operators, lessors or lessees. *Id.*;
4. The defendant's facility must have either undergone an alteration that did not comply with the access standards or contain an easily removed barrier that the defendant failed to remove. 42 U.S.C. §§12183(a)(2); 12182(b)(2)(A)(iv);
5. Plaintiff must have actually encountered this non-removed and unlawful barrier. 42 U.S.C. § 12188(a).

As discussed below, Mr. Bouyer's civil rights were violated because the Defendant failed to provide accessible parking and an accessible ramp at their Business. Plaintiff will discuss each element, seriatim.

### A. Plaintiff is Disabled

Mr. Bouyer is a man who cannot move his feet and is mobility impaired, and is substantially limited in performing one or more major life activities, including but not limited to: walking, standing, ambulating, sitting, in addition to twisting, turning, and grasping objects (SUF #1). Plaintiff uses a wheelchair to ambulate. (SUF #2-3). There can be little doubt that he fits the qualification under the ADA as a person with a disability. 42 U.S.C. § 12102(2)(A) (defining a physical impairment substantially affecting a major life activity as qualifying as a disability).

### B. Defendant Owns and Operates a Place of Public Accommodation

The Business is a store. Retail stores are expressly identified under the ADA as places of public accommodation. 42 U.S.C. § 12181(7). Defendants owned and operated and currently still own this place of public accommodation during Mr. Bouyer's visit. (SUF #4-6). The Defendant, therefore, had an obligation to comply with the anti-discrimination provisions of Title III of the ADA.

### C. The Business Has Barriers That Are Readily Removable

The ADA defines "discrimination" as a failure to remove architectural barriers where it is readily achievable to do so. 42 U.S.C. § 12182(b)(2)(A)(iv). The term "barrier" is not defined in the Act itself but is defined in the Technical Assistance Manual:

> III-4.4100: What is an architectural barrier? Architectural barriers are physical elements of a facility that impede access by people with disabilities. These barriers include more than obvious impediments such as steps and curbs that prevent access by people who use wheelchairs.

Department of Justice, Technical Assistance Manual on the American with Disabilities Act (BNA) §§ III-4.4100 (1991).

Case law is more specific. "To determine if Plaintiff describes an 'architectural barrier' the Court must turn to the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG"). If an element does not meet or exceed ADAAG standards, it is considered a barrier to access." *Rush v. Denco Enterprises, Inc.*, 857 F. Supp. 2d 969, 973 (C.D. Cal. 2012) (internal cites omitted). "Any element in facility that does not meet or exceed the requirements set forth in the ADAAG is a barrier to access." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (identifying this as the formal position of the Department of Justice). These are "objective" and "precise" standards and "the difference between compliance and noncompliance" is "often a matter of inches." Id.

#### 1. Path of Travel

Defendants have no connecting path of travel from the public right of way to the parking and entries without going into the vehicular way which is not compliant in violation of sections 2010 ADA Guidelines 206.2, 403.3 and 11B-206.2, 11B-403.3. (SUF #17). The cross slope from the parking onto the walkway are greater that 2.083% in violation of sections 403.3 and 11B-403.3. (SUF #26). The threshold of the walkway at the store entry has not been maintained and there are

excessive gaps and level changes from the sidewalk through the door and into the store in violation of sections 302.3, 303.2, 404.2.5, 36.211 and 11B-302.3, 11B-303.2, 11B-404.2.5, 11B-108. (SUF #20). The entry to the store does not have a level landing to 60" beyond the face of the door in violation of sections 206.4, 404.2.4.4 and 11B-206.4, 11B-404.2.4.4. (SUF #19). The door itself does not have a smooth surface to 10" above the finished floor and a portion of the clear floor space was blocked in violation of sections 404.2.4, 404.2.10 36.211 and 11B-404.2.4, 11B-108. (SUF #21).

    2. *Parking*

The two reserved parking spaces are missing a van accessible space in violation of 2010 ADA Guidelines §§ 208.2, 208.3 and CBC §§ 11B-208.2, 208.3. (SUF #14). The striping was not fully compliant and the slope beyond the foot and edge of the space and aisle were excessive in violation of sections 502.3.3 and 11B-502.3.3. (SUF #15). While there is no specific requirement for slopes beyond the demarcated space, an individual is allowed to go behind their own parked vehicle which would require a level slope to at least 36" beyond the space. (SUF #16). Where the asphalt is not feathered further away from the parking space creates a dangerous situation since people maneuver around their own vehicle. (SUF #26). This condition is especially relevant for Plaintiff, who uses a walker to move to the back of his car to access his wheelchair. The walkway at the head of the space had excessive slope and was missing yellow detectable warnings where there is a blended transition. (SUF #18).

    3. *Interior*

Within the store, portions of the flooring were not firm and stable due to a loose walk-off mat and to a partially infilled hole near the refrigerated cabinets in violation of sections 302.1, 302.2 and 11B-302.1, 11B-302. (SUF #22) The counter was too high and does not have a 36" wide portion clear and usable in violation of sections 904.4.1 and 11B-904.4.1. (SUF #23) The aisles in the interior

were not a compliant width in violation of 403.5.1 and 11B-403.5.1, except 4. (SUF #24)

### 4. Removal of ADA violations is readily achievable

In order for the Property to have an accessible path and travel from the public right of way, to and including accessible parking, to the store entry, and within the store, the foregoing are suggested items, all of which appear to be at minimal cost. (SUF #25)

To correct these barriers, the curb and bollards along the sidewalk should be removed from the parking space directly across from the access aisle. (SUF #26) A 36" deep strip of yellow truncated domes should be placed in this area. (SUF #26) The slope from the sidewalk through this area to the access aisle should be corrected to be a 5% maximum running slope with a 2.083% maximum cross slope. (SUF #26) It would be preferable if the slope at the edge of the new parking paving were feathered out further into the drive aisle to level the area. (SUF #26) The access aisle itself should be restriped in a compliant fashion. (SUF #27) The tow-away signs should have the missing towing address installed as a permanent part of the sign. (SUF #27)

The slope from the head of the access aisle to the store entry should be corrected to be 2.083% maximum cross slope. (SUF #28) Detectable warnings should be placed where there is a blended transition at the head of the accessible parking and access aisle. (SUF #28)

The store entry should have the missing paving at the threshold infilled on both sides of the door to create a level area. (SUF #29) The lock on the push side of the door should be removed and made flush. (SUF #29)

The interior transaction counter should be lowered and widened to be 36" minimum in width for the full depth of the counter and at 34" maximum above the finished floor. (SUF #30) The walk-off mat should be secured on all edges to the floor or removed. (SUF #30) The aisles are not wide enough so the display of the

10
MEMORANDUM OF POINTS AND AUTHORITIES

interior will need to be reworked to meet both ADA and the California Building Code (CBC). (SUF #30)

In sum, the Defendant failed to remove barriers that were readily achievably removed and, therefore, violated the Plaintiff's rights under the ADA.

### D. Plaintiff Encountered Violations and Is Being Deterred from Patronage

Mr. Bouyer personally encountered these violations and he faces the threat of continued and repeated violations. (SUF #7-10, 31-34) Defendants failed to provide compliant accessible parking and path of travel on each of the dates of Mr. Bouyer's visits, and the access barriers continue to exist. (SUF #7-34) On May 22, 2020, Plaintiff encountered parking and path of travel barriers that are violations of the ADA, which caused him difficulty and deterred him from future visits. (SUF #7-10)

Since then, Defendants attempted to moot Plaintiff's claims by altering the Property. But instead of fixing the barriers to access, Defendant created more ADA violations and failed to fix all other inaccessible features at the Property. (SUF #12) As of December 30, 2020, the date of Plaintiff's investigator's investigation, the parking, accessible routes, and interior of the Property were still not compliant, and Ms. Kent identified new barriers to access caused by Defendants' deficient attempt to moot Plaintiff's claim. (SUF #12-13)

On January 6, 2021, Plaintiff learned that the Property had been altered and he returned to see if the barriers to access had been removed. (SUF #31) When he arrived, Plaintiff noticed that the curb ramp had been paved over and flattened and that there was new striping on the ground. (SUF #32) But when Plaintiff exited his car to get to his wheelchair in the trunk, he found that slope on the sides and back of his SUV and around the parking space were not level, which caused him difficulty and made it hard to keep balance when he moved on his walker. (SUF #33) Plaintiff encountered the same nonlevel slope when he got into his wheelchair, which further

MEMORANDUM OF POINTS AND AUTHORITIES

caused him difficulty. (SUF #34) Encountering the slope barriers on January 6, 2021, created by Defendants' alterations of the Property that caused Plaintiff difficulty and deterred him from returning to the Property and Business in the future. (SUF #35) Despite the difficulty on January 6, 2021, Plaintiff was able to enter the Salsa and Beer restaurant at the Property and purchased a meal. (SUF #36)

On January 7, 2021, Plaintiff learned that his counsel hired CASp, Ms. Kent, who inspected the Property and who found several additional violations of the ADA that Plaintiff did not identify, but encountered, during his visits. (SUF #37) Plaintiff learned of the additional barriers identified by Ms. Kent that directly affect him and are dangerous to him while he uses his wheelchair, and further deterred him from returning. (SUF #37)

Accordingly, the parking and paths of travel alleged in the Complaint are still not compliant. This failure to maintain the parking and path of travel demonstrates an apathy or an ignorance about compliance. Defendants should not only be required to provide an accessible facility; they should also be required to implement a policy and procedure to maintain the facility. Until then, plaintiff will continue to be aggrieved by the likelihood of the recurring barriers.

In sum, there has been a violation of the American with Disabilities Act and injunctive relief is warranted.

## V. DEFENDANT'S SHODDY REMEDIAL EFFORTS IN RESPONSE TO LITIGATION CANNOT MOOT PLAINTIFF'S CLAIM

Even if Defendants had fixed the violations (they did not) they would not be able to establish that the violations will not recur. "The test for mootness…is a stringent one. Mere voluntary cessation of an allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave the defendant free to return to his old ways." *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203-04 (1968) (citation and internal punctuation omitted.) Moreover, "[i]t is well settled that a defendant's voluntary cessation of a challenged practice

does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). A claimed remedy "might become moot if subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." The party asserting mootness has "the heavy burden of persuading the Court that the challenged conduct cannot be reasonably expected to recur." *Friends of the Earth*, 528 U.S. at 167.

In this case, Plaintiff alleged in his complaint that, "The Defendants have failed to maintain in working and usable conditions those features required to provide ready access to persons with disabilities" and "Defendants have no policy or plan in place to make sure that the designated disabled parking for persons with disabilities comport with the ADAAG." (Complaint ¶¶ 15; 22.) It appears that without an injunction forcing the defense to comply with the ADA, this cycle will recur every few years.

Additionally, the presence of barriers created during litigation indicates no serious commitment by Defendants to accessibility further supports injunctive relief. Defendant's actions during the pendency of litigation prove that Defendants cannot meet a voluntary cessation standard. Defendants' impulsive and substandard remedial efforts that were intended only to moot Plaintiff's claims without any plan or policy to remove all barriers to access demonstrates the lack of voluntary cessation and supports the need to impose injunctive relief. Accordingly, Defendants' conduct during litigation show that they cannot meet the heavy burden of persuasion that violations of the ADA cannot be reasonably expected to recur.

## VI. REMEDIES

The Plaintiff seek injunctive relief. Under the ADA, the plaintiff is entitled to injunctive relief. 42 U.S.C. §12188(a). Such injunctive relief "shall include an order to alter facilities to make such facilities readily accessible to and useable by individuals with disabilities" to the extent required by the ADA. Section

12188(a)(2). "Allegations that a plaintiff has visited a public accommodation on a prior occasion and is currently deterred from visiting that accommodation by accessibility barriers establish that a plaintiff's injury is actual or imminent." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1041 (9th Cir. 2008). "We have found actual or imminent injury sufficient to establish standing where a plaintiff demonstrates an intent to return to the geographic area where the accommodation is located and a desire to visit the accommodation if it were made accessible." *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1037 (9th Cir. 2008).

Here, Plaintiff has bought drinks and food at both the Carmel Liquor store and Salsa and Beer restaurant on multiple prior occasions, which are serviced by the parking lot of the Property. (SUF #41). Plaintiff likes to go to the Salsa & Beer restaurant, which is next door to the Carmel Liquor, and he frequently visits friends who live in the area. (SUF #42) Plaintiff plans to return to Carmel Liquor, Salsa and Beer, and to the Property, to buy food and beverages at both of these stores. (SUF #43) Plaintiff has already returned again to the Property on January 6, 2021, when he learned that alterations were made to the Property. (SUF #31) Once Plaintiff is informed that Defendants' facility actually has become fully and equally accessible, he plans to return to enjoy the store and restaurant at the Property and also as a "tester" for the purpose of confirming the Property's accessibility. (SUF #44)

In light of Defendants choice of shoddy remediation for the sole purpose of mooting Plaintiff's claims and not actual accessibility, Defendants should be required to provide both an accessible facility *and* implement a policy and procedure to maintain the facility. Until then, Plaintiff will continue to be aggrieved by the likelihood of the recurring barriers.

**VII. CONCLUSION**

The Plaintiff respectfully requests this Court grant his motion.

Dated: January 14, 2021                                **MANNING LAW, APC**

By: /s/ Joseph R. Manning, Jr., Esq.
Joseph R. Manning, Jr., Esq.
Attorney for Plaintiff